UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BAILEY RIDGWAY Personal Representative of the Estate of Donald Payne,<br>BARBARA PAYNE,<br>MARTIN TABOR,<br>KENDRA TABOR,<br><br>Plaintiffs,<br><br>v.<br><br>TRIFECTA VENTURES LLC,<br><br>Defendant. | ) | No. 1:26-cv-00513-JPH-TAB |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Trifecta Ventures LLC, a Kentucky-based houseboat manufacturer, sold houseboats to two Indiana couples, Donald and Barbara Payne[1] and Martin and Kendra Tabor ("Plaintiffs"). Plaintiffs filed this action alleging, in part, that Trifecta misrepresented the quality of its houseboats and that the houseboats sold to Plaintiffs were defective. Trifecta has filed a motion to dismiss for lack of personal jurisdiction. Dkt. [2]. For the reasons below, that motion is **DENIED**.

## I. Facts and Background

Because Trifecta has moved for dismissal under Federal Rule of Civil Procedure 12(b)(2), this Court accepts "as true all well-pleaded facts alleged in

[1] After Donald Payne's death, *see* dkt. 23, Bailey Ridgway was substituted as the personal representative of his estate, dkt. 28. *See* Fed. R. Civ. P. 25(a).

the complaint and resolve[s] any factual disputes in the affidavits in favor of the plaintiffs." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019).

Trifecta is a Kentucky company that specializes in the manufacture and sale of luxury houseboats, which it describes as "set[ting] the standard for excellence in the houseboating world." Dkt. 1-1 at 4, 6. The houseboats "are built with meticulous attention to detail, ensuring . . . a durable and stunning vessel." *Id.* Trifecta advertises that it "guarantees [its] work each and every time" and is "committed to quality." *Id.* at 7.

Trifecta sold houseboats to Plaintiffs, Indiana residents Donald and Barbara Payne and Martin and Kendra Tabor. Dkt. 1-1 at 3–4. Plaintiffs "would not have purchased the houseboats" without Trifecta's statements about the quality of its work and its houseboats. *Id.* at 8.

After receiving their houseboats, Plaintiffs found numerous problems including structurally deficient floors, damaged or defective windows, warped doors, and flexing and damaged roofs. *Id.* at 12–16. Plaintiffs discussed those problems with Trifecta between September 2024 and July 2025. *Id.* at 8–12. During that span, Trifecta made a series of "deceptive, false, and misleading" statements to Plaintiffs—while they were in Indiana—about the status of the houseboats. *Id.* at 8. For example, Trifecta falsely told the Tabors that their houseboat's roof was "more than adequate" and "within specification with no structural issues." *Id.* at 8–10. And Trifecta falsely told the Paynes "that their boat was complete," "their boat's roof was done to standard," "all complaints by

the Paynes to that date" had been addressed, and "no formal structural defect or failure has been observed or verified." *Id.*

Plaintiffs filed this action in Indiana state court seeking damages for the problems with the houseboats. *Id.* at 27–28. Count 1 of their complaint alleges violations of Indiana and Kentucky consumer protection laws based on "unfair, abusive, deceptive, false, and misleading" acts "before, during, and after the transactions." *Id.* at 17–20. Trifecta removed the case to this Court, dkt. 1, and filed a motion to dismiss for lack of personal jurisdiction, dkt. 2.

## II.
## Rule 12(b)(2) Standard

Defendants may move under Federal Rule of Civil Procedure 12(b)(2) to dismiss claims for lack of personal jurisdiction. When "[a] defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). "At this early stage in the litigation, and without the benefit of an evidentiary hearing, the plaintiff bears only the burden of making a prima facie case for personal jurisdiction." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423 (7th Cir. 2010).

## III.
## Analysis

Indiana law governs this personal jurisdiction analysis. Fed. R. Civ. P. 4(k)(1)(A); *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Because Indiana extends personal jurisdiction to any basis "consistent with the Federal Due

Process Clause," the sole issue is "whether the exercise of jurisdiction comports with the limits imposed by federal due process." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) (citing Ind. Trial Rule 4.4(A)).

Due process allows courts to exercise personal jurisdiction if "the maintenance of the suit is reasonable, in the context of our federal system of government, and does not offend traditional notions of fair play and substantial justice." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting "[t]he canonical decision" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1946)). The Court can exercise personal jurisdiction over Trifecta if "the nature and extent of [its] relationship to the forum State" supports either general or specific personal jurisdiction. *Id.* General jurisdiction allows "any and all claims" when the defendant is "essentially at home" in the state, while specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Id.* at 358–59. Plaintiffs do not contend that general jurisdiction applies, so only specific jurisdiction is at issue. *See* dkt. 21 at 15 (narrowing their analysis to "contacts relat[ing] directly to the subject matter of this case").

To establish specific jurisdiction, a plaintiff must show "three essential requirements: (1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must

comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). Trifecta contests only the first requirement, arguing that it did not "purposefully direct" its actions at Indiana. *See* dkt. 2-1 at 12, dkt. 21 at 4.

The "nature of the purposeful-direction . . . inquiry depends in large part on the type of claim at issue." *Felland*, 682 F.3d at 674. Here, the parties agree that the inquiry is whether Trifecta "expressly aimed" its actions at Indiana. Dkt. 22 at 5–6; dkt 21 at 6; *see Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 445–46 (7th Cir. 2010) ("[A] defendant's intentional tort creates the requisite minimum contacts with a state only when the defendant *expressly aims* its actions at the state with the knowledge that they would cause harm to the plaintiff there." (emphasis added)). That standard reflects Count 1 of Plaintiffs' complaint, which alleges "unfair, abusive, deceptive, false, and misleading" acts in violation of Indiana and Kentucky consumer protection laws. Dkt. 1-1 at 17–20; *see* dkt. 21 at 3, 6 (addressing personal jurisdiction under only Count 1).[2]

Plaintiffs argue that Trifecta "expressly aimed" its conduct at Indiana because it "made false and misleading statements that were specifically directed to Indiana," knowing "at all times that [Plaintiffs] were Indiana residents." Dkt. 21 at 6–7. Trifecta responds that its Indiana contacts were

[2] Plaintiffs' remaining claims raise breach of warranty and contract-related claims. Dkt. 1-1 at 21–27. The breach-of-contract standard for purposeful-direction is different, but the parties agree that the "expressly aims" standard applies, so the Court does not address personal jurisdiction under any other standard. *See Felland*, 682 F.3d at 674.

"attenuated" and "all tie back to Trifecta's location in Kentucky," so they do not "constitute a substantial connection with Indiana." Dkt. 22 at 8.[3]

Whether Trifecta's conduct was expressly aimed at Indiana "focuses on whether the conduct underlying [Count 1] was purposely directed" at Indiana. *Felland*, 682 F.3d at 674. Count 1 alleges that Trifecta made "implicit and explicit misrepresentations" about its "unfair, abusive, deceptive, false, and misleading" acts occurring "before, during, and after the transactions." Dkt. 1-1 at 17–20.

Plaintiffs allege that they "would not have purchased the houseboats but for" Trifecta's statements about its "craftmanship"; "meticulous attention to detail"; and the houseboats' "quality, service, and longevity." *Id.* at 5–8. Then, after the sales, Trifecta made false statements to the Tabors over several months that their houseboat's roof was "more than adequate" and "within specification with no structural issues." *Id.* at 8–10. Trifecta falsely told the Paynes in June and July 2025 "that their boat was complete," "their boat's roof was done to standard," "all complaints by the Paynes to that date" had been addressed, and "no formal structural defect or failure has been observed or

[3] Plaintiffs argue that Trifecta should not be allowed to challenge their jurisdictional theory in its reply brief because "[a]rguments not made in an opening brief are waived." Dkt. 21 at 9. Trifecta's reply, however, appropriately addresses specific personal jurisdiction after Plaintiffs focused their jurisdictional theory in their brief. *See Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, No. 1:09-cv-0340-SEB-DML, 2010 WL 1258052 at *2 (S.D. Ind. Mar. 25, 2010) ("The purpose for having a motion, response and reply is to give the movant the final opportunity to be heard and to rebut the non-movant's response."). The Court therefore considers Trifecta's reply brief.

verified." *Id.* Trifecta knew that the Tabors and Paynes were Indiana residents, and made those statements while Plaintiffs were in Indiana. *Id.* at 2, 6–10.

"Tortious acts aimed at a target in the forum state and undertaken for the express purpose of causing injury there are sufficient to satisfy [the] express-aiming requirement." *Tamburo v. Dworkin*, 601 F.3d 693, 706 (7th Cir. 2010). Plaintiffs allege that they suffered financial injuries in Indiana from Trifecta's false statements. *See* dkt. 1-1 at 4, 20. And since those false statements are the basis of Count 1 and were made to Plaintiffs in Indiana, Trifecta's "contacts with the forum state relate to the challenged conduct." *Felland*, 682 F.3d at 673 (finding personal jurisdiction proper based on intentional misrepresentations directed at the plaintiff in the forum state). In other words, Trifecta's communications to Plaintiffs constitute "conduct underlying the claim" that was "purposely directed at the forum state," which is sufficient for personal jurisdiction. *Id.* at 674; *see John Crane, Inc. v. Shein Law Center, Ltd.*, 891 F.3d 692, 696 (7th Cir. 2018) (explaining *Felland*'s holding that conduct aimed at the forum state supports specific jurisdiction when it is "the basis of plaintiffs' claim of intentional misrepresentation"); *FMC Corp. v. Varonos*, 892 F.2d 1308, 1313–14 (7th Cir. 1990) (affirming the exercise of personal jurisdiction based on ongoing misrepresentations sent to the forum state).

This case is therefore like *Felland*. There, a Wisconsin resident contracted with an Arizona developer for the purchase of a condominium in a planned development. *Felland*, 682 F.3d at 669. The developer then sent

misleading emails, phone calls, and letters to the plaintiff's Wisconsin home. *Id.* After the plaintiff discovered the defendant's fraudulent scheme, he brought tort claims in his home state of Wisconsin. *Id.* The Seventh Circuit reversed a dismissal for lack of personal jurisdiction, holding that specific jurisdiction was proper in Wisconsin because the defendant's "repeated communications to [plaintiff's] Wisconsin home were part of a deliberate attempt to lull him into a false sense of security and to induce him to make the installment payments." *Id.* at 670.

Under that holding, specific jurisdiction over Trifecta is proper here. *Id.*; *see also John Crane*, 891 F.3d at 696 ("In *Felland v. Clifton*, this court found sufficient contacts based on communications sent to the plaintiffs in the forum state."). Plaintiffs bought houseboats from Trifecta based on its statements about their quality. Then, after Plaintiffs discovered problems with them, Trifecta made continuing misrepresentations—that caused harm to Plaintiffs in Indiana—about whether there were structural issues and how Plaintiffs' concerns would be addressed. Because those communications "can be considered part of [the] larger" ongoing pattern of misrepresentations alleged in Count 1, they "are properly considered as having been purposefully directed at the forum state." *Felland*, 682 F.3d at 675–76. And because Trifecta aimed its communications at Indiana, and alleges no undue burden to litigating here, there is no unfairness in allowing this case to proceed in Indiana that could "offend traditional notions of fair play and substantial justice." *Tamburo*, 601 F.3d at 709; *Felland*, 682 F.3d at 677.

Trifecta nevertheless argues that its communications cannot support personal jurisdiction because they were not expressly aimed at Indiana and were made after the houseboats were sold and delivered. Dkt. 22 at 7–8. But Trifecta sent regular and deliberate misrepresentations to Plaintiffs, while Trifecta knew they were in Indiana, about their houseboats. Dkt. 1-1 at 8–10. That is enough to support express aiming at Indiana. *Felland*, 682 F.3d at 669–70; *accord Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff."). Because Count 1 relies on those post-sale communications, it does not matter that they occurred after the houseboats were sold and delivered. *See Felland*, 682 F.3d at 669–70 ("[T]he many communications that Clifton purposefully directed to Wisconsin—including those sent after Felland signed the [agreement] and paid the down payment—are properly part of the personal-jurisdiction analysis."). For example, personal jurisdiction can be proper based on a defendant's call to "the plaintiff in his home state *after* the defendant had allegedly tricked the plaintiff into disclosing confidential information." *Felland*, 682 F.3d at 669–70 (agreeing with *Master Tech Products, Inc. v. Smith*, 181 F.Supp.2d 910, 912 (N.D. Ill. 2002)).

The district-court opinions that Trifecta cites do not hold otherwise. *See* dkt. 22 at 7–8. In *Diversity Max LLC v. Waller*, an "exchange of phone calls and emails following the commencement of the parties' business relationship" was not enough for personal jurisdiction in Indiana when the central alleged

misrepresentations had previously occurred in Texas. No. 1:14-cv-2066-RLY-MPB, 2016 WL 1270205 at *1, 4 (S.D. Ind. Mar. 31, 2016). And in *Martin v. Maurer*, the phone calls at issue were not expressly aimed at Indiana because they were "made from the forum state to a nonresident defendant," instead of being initiated by the defendant. No. 1:15-cv-1471-RLY-MJD, 2016 WL 3198117 at *5 (S.D. Ind. Feb. 3, 2016). The allegations here, by contrast, include extensive claim-related statements from Trifecta to Plaintiffs in Indiana, supporting specific jurisdiction. *See Felland*, 682 F.3d at 675 (finding personal jurisdiction proper when "the myriad additional communications to [plaintiff's] Wisconsin address were part of a comprehensive and ongoing scheme"); *FMC Corp.*, 892 F.2d at 1313–14 (finding personal jurisdiction proper when misrepresentations directed to the plaintiff in the forum state were part of the claim alleging a scheme to defraud).

In sum, at the motion to dismiss stage, Plaintiffs "need only make a prima facie showing of jurisdictional facts," and they have done so here. *Felland*, 682 F.3d at 672, 676 (explaining that, at the pleadings stage, the Court "must accept as true" that the defendant "intentionally misrepresented important information about the progress and financing of the project"). Because Plaintiffs allege ongoing misrepresentations that are the basis of Count 1, Trifecta's motion to dismiss is denied.[4]

[4] Plaintiffs also argue that that Trifecta's Indiana business transactions independently support the exercise of personal jurisdiction. Dkt. 21 at 13–15. The Court does not consider this alternative argument because specific jurisdiction is appropriate based on the alleged misrepresentations underlying Count 1.

## IV.
## Conclusion

Trifecta's motion to dismiss for lack of personal jurisdiction is **DENIED**.

Dkt. [2].

**SO ORDERED.**

Date: 11/23/2026

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel